## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| **MARY WOODY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **vs.** | ) | |
| | ) | **2: 09-CV-00753** |
| | ) | |
| **MYLAN PHARMACEUTICALS,** | ) | |
| **INC.; ACTAVIS TOTOWA, LLC;** | ) | |
| **ACTAVIS GROUP hf; MYLAN** | ) | |
| **BERTEK PHARMACEUTICALS,** | ) | **Initial Complaint filed in** |
| **INC.; and UDL LABORATORIES,** | ) | **United States District Court** |
| **INC.** | ) | **Northern District of Alabama** |
| | ) | **CV-09-RRA-0794-M** |
| **Defendants.** | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**NOW** comes the plaintiff, Mary Woody, by and through undersigned counsel, and files this Amended Complaint and respectfully shows this Honorable Court the following:

## PARTIES, VENUE AND JURISDICTION

1.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the matter in controversy exceeds the jurisdictional amount exclusive of interest and costs.

2.

Venue is proper under 28 U.S.C. §§ 1391 (a).

3.

Plaintiff Mary Woody (hereinafter sometimes referred to as "Plaintiff") is a resident of the city of Springville, Saint Clair County, Alabama. Plaintiff is subject to the jurisdiction of this Court.

4.

Plaintiff Mary Woody has suffered bodily injuries and other damages as a result of her ingestion of recalled Digitek® (Digoxin). Mary Woody was prescribed, purchased and ingested Digitek ® (Digoxin) in Saint Clair County, Alabama.

5.

Actavis Totowa, LLC is a New Jersey corporation. At all times relevant herein, Actavis Totowa, LLC was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing Digitek ® (Digoxin).

6.

Actavis Group, hf. is a foreign corporation. At all times relevant herein, Actavis Group was engaged in the business of manufacturing, marketing, promoting, testing, selling, and/or distributing Digitek ® (Digoxin).

7.

Mylan Pharmaceuticals, Inc. is a West Virginia corporation with its principal place of business located in Morgantown, West Virginia. At all times relevant herein, Mylan Pharmaceuticals, Inc. was engaged in the business of testing, marketing, promoting, selling and/or distributing Digitek ® (Digoxin).

8.

Mylan Bertek Pharmaceuticals, Inc. is a Texas corporation. At all times relevant herein, Mylan Bertek Pharmaceuticals, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing Digitek ® (Digoxin).

9.

UDL Laboratories, Inc. is an Illinois corporation. At all times relevant herein, UDL Laboratories, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing Digitek ® (Digoxin).

## FACTUAL ALLEGATIONS

### 10.

Paragraphs 1 through 9 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein.

### 11.

Actavis Group, through its manufacturing division, Actavis Totowa, LLC, designed, researched, tested, and manufactured Digitek ® (Digoxin). Mylan Pharmaceuticals, Inc. distributed Digitek ® (Digoxin) through its affiliates Mylan Bertek Pharmaceuticals, Inc. and UDL Laboratories, Inc. under the labels of Bertek and UDL. All defendants advertised, marketed, promoted and sold Digitek ® (Digoxin).

### 12.

Digitek ® (Digoxin) is widely used in the treatment of various heart conditions including atrial fibrillation, atrial flutter and heart failure that cannot be controlled by other medications. The United States Food and Drug Administration approved the medication to be manufactured, distributed and sold with approved levels of active ingredient.

### 13.

Digitek® (Digoxin) was widely sold throughout the United States. Digitek®

(Digoxin) was a mass marketed product throughout the United States. Numerous consumers have been similarly injured by Defendants' wrongful conduct.

14.

Defendants were negligent in the design, testing, manufacturing, advertising, marketing, promotion, labeling, warnings given and sale of Digitek ® (Digoxin) because the medication was provided for use by the public with twice the approved level of active ingredient.

15.

Digitek ® (Digoxin) has a narrow therapeutic index, and thus, has a limited margin between effectiveness and toxicity.

16.

Ingestion of excess levels of the active ingredient in Digitek ® (Digoxin) beyond the level approved by the FDA can cause death and other health problems.

17.

Upon information and belief, defendants received at least eleven (11), and possibly more, complaints about significant adverse side effects including illnesses and injuries from Digitek ® (Digoxin) since 2006.

18.

Defendants have a history of releasing drug products for public consumption

that have been adulterated.

19.

Defendants have a history of failing to reliably establish the identity, strength, quality and purity of drug products they release for public consumption.

20.

Defendants have a history of failing to adequately investigate and document out -of- specification test results on their drug products.

21.

Defendants failed to adequately warn users of the defective drug of its unreasonably dangerous characteristics due to the excess levels of active ingredient the drug contained.

22.

Mary Woody suffered from shortness of breath and erratic heartbeats and was prescribed Digitek ® (Digoxin) by her physician.

23.

As a result of Mary Woody's ingestion of Digitek® (Digoxin) she suffered bodily injury.

24.

Defendants' conduct in the design, testing, manufacturing, advertising,

marketing, promotion, labeling, warnings given and sale of Digitek ® (Digoxin) for use by the public with twice the approved level of active ingredient was a proximate cause of Mary Woody's bodily injuries and damages.

25.

Defendants knew or, in the exercise of reasonable care, should have known that their drug was defective and that Mary Woody would reasonably be expected to use their drug and suffer injury as a result of normal use of the drug.

26.

Defendants owed a duty to Mary Woody, to design, manufacture, test, advertise, promote, sell and distribute Digitek ® (Digoxin) without hidden and concealed defects.

27.

Defendants breached said duty to Mary Woody, and thereby proximately caused her injuries and damages.

## EQUITABLE TOLLING OF THE STATUES OF LIMITATIONS

28.

The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants failed to timely and adequately disclose a defect or the true risks to Plaintiff, or their prescribing physicians and misrepresented that their Digitek® (Digoxin) was safe for its intended use.

29.

As a direct and proximate result of Defendants' actions, Plaintiff and her prescribing physicians were not timely aware, and could not have reasonably known or learned through reasonable diligence of the defects and risks that Plaintiff had been exposed to.

30.

Defendants are estopped from relying on any statue of limitations because of their concealment of the risks and problems with Digitek® (Digoxin). Defendants were under a duty to fully and fairly disclose the true nature and quality of Digitek® (Digoxin) because this was information in the possession and control of Defendants, and Defendants knew of should have known that this information was not available to Plaintiff.

31.

Plaintiff had no knowledge that Defendants had engaged in or were engaging in the conduct alleged herein.  Because of Defendants' conduct Plaintiff could not have reasonably discovered the wrongdoing of Defendants at any time prior to April 25, 2008, upon the announcement of the recall.

## COUNT I
## STRICT LIABILITY IN TORT

32.

Paragraphs 1 through 31 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

33.

Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed Digitek® (Digoxin) which was used and ingested by Plaintiff Mary Woody.

34.

Digitek® (Digoxin) was expected to, and did, reach the usual consumers, handlers and persons coming into contact with said drug without substantial change in the condition in which it was produced, manufactured, tested, sold, distributed and marketed by Defendants.

35.

At all times relevant to her Complaint, Digitek® (Digoxin)  was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users, specifically including Plaintiff Mary Woody because it contained excess levels of active ingredient.

36.

Digitek® (Digoxin) was so defective in design, formulation, manufacture and testing that when it left the hands of Defendants, the foreseeable risks exceeded the benefits associated with the design, formulation and manufacture of Digitek® (Digoxin).

37.

Defendants knew, or should have known, at all times relevant herein that Digitek® (Digoxin) was in a defective condition and was inherently dangerous and unsafe because it contained excess levels of active ingredient.

38.

Plaintiff Mary Woody used Digitek® (Digoxin) for the purpose and manner normally intended for the drug.

39.

Plaintiff Mary Woody, acting as a reasonably prudent person, she could not have discovered that Digitek® (Digoxin) was defective, nor could he have perceived its danger.

40.

Defendants had a duty to create a product that was safe for its normal, intended use.

41.

Upon information and belief, sales, prescription, use and ingestion continued after Defendants knew, or should have known that their product contained excess levels of active ingredient, and therefore, presented risk of serious side effects including, but not limited to, nausea, vomiting, dizziness, low blood pressure, cardiac instability, bradycardia, toxicity and death, as well as other severe and permanent health consequences. Therefore, Defendants are strictly liable in tort for the bodily injuries and damages of Mary Woody.

42.

The Digitek® (Digoxin)  designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants contained excess levels of active ingredient, and was therefore, unreasonably dangerous, not reasonably safe, and did not meet reasonable consumer expectations because of

design and manufacturing defects, use defects including inadequate warnings, and defects attributable to inadequate testing. Defendants are, therefore, strictly liable for the injuries and damages of Mary Woody.

43.

The Digitek® (Digoxin) designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants contained excess levels of active ingredient, and therefore, was defective due to inadequate post-marketing surveillance and/or warnings. Defendants are, therefore, strictly liable for the injuries and damages of Mary Woody.

44.

The Digitek® (Digoxin) designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants was unreasonably dangerous, because

a. the manufacturing processes for the drug did not satisfy the Food and Drug Administration's manufacturing standards;

b. the failure of the defendants' manufacturing process for the drug to satisfy the Food and Drug Administration's applicable

manufacturing standards resulted in unreasonably dangerous manufacturing defects, and

c. the defendants failed to warn of the unreasonable risks created by these manufacturing defects.

45.

Defendants created an unreasonable risk to the health of consumers, including Plaintiff.

46.

At all relevant times, the Recalled Digitek® (Digoxin) was defective and unreasonably dangerous under ALA.Code § 6-5-501 (2), and the law of Alabama pertaining to Products Liability.

47.

As direct and proximate result of Defendants' defective and unreasonably dangerous product, Plaintiff was harmed, incurred medical expenses and paid for the adulterated Digitek® (Digoxin). As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff will or may continue to suffer harm

and economic loss.

48.

Defendants are therefore strictly liable to Plaintiff.

## COUNT II
## NEGLIGENCE

49.

Paragraphs 1 through 48 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

50.

Defendants had a duty to exercise reasonable care in manufacturing, marketing, researching, testing, design, marketing, promotion, packaging, sale and distribution of Digitek® (Digoxin) for public consumption.

51.

Defendants failed to exercise reasonable care and were negligent through the following acts and omissions:

a. Manufacturing, designing, promoting, formulating, creating, marketing, packaging, distributing and selling Digitek®

(Digoxin)  in violation of FDA drug approved requirements because the drug was released for public consumption with excess levels of active ingredient beyond that approved by the FDA;

b.  Manufacturing, designing, producing, promoting, formulating, creating, marketing, distributing and selling Digitek® (Digoxin) without properly testing it to ensure it did not have excess levels of active ingredient;

c.  Manufacturing, designing, producing, promoting, formulating, creating, marketing, distributing and selling Digitek® (Digoxin) in a manner that was dangerous to intended users because it contained excess levels of active ingredient;

d.  Failing to adequately warn, timely recall or otherwise notify health care providers and users at the earliest date that it became known that Digitek® (Digoxin)  was dangerous and defective because it contained excess levels of active ingredient;

e.  Negligently advertising and recommending the use of Digitek® (Digoxin) without ensuring the safety of the drug for its intended use;

f.   Failing to reliably establish the identity, strength, quality and purity of the Digitek® (Digoxin) that Defendants released into the market; and

g.   Failing to conduct adequate post-marketing surveillance to ensure the safety of Digitek® (Digoxin).

52.

Defendants under-reported, underestimated and/or downplayed the serious dangers and the defective nature of Digitek® (Digoxin).

53.

Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as outlined above.

54.

Defendants' negligence was a proximate cause of Plaintiff's bodily injuries and damages.

55.

The Defendants were negligent in manufacturing Digitek® (Digoxin)

because:

    a.    their manufacturing process for the drug did not satisfy the Food and Drug Administration's manufacturing standards;

    b.    the failure of the manufacturing processes for the drug to satisfy the Food and Drug Administration's manufacturing standards for the devices resulted in unreasonably dangerous manufacturing defects, and

    c.    the defendants failed to warn of the unreasonable risks created by these manufacturing defects.

56.

Defendant among other things:

    a.    failed to use reasonable care to ensure that Digitek® (Digoxin) was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

    b.    produced, sold, released, and/or distributed Digitek® (Digoxin) without making sufficient tests to determine the

drug's strength or dose;

c.      failed to use reasonable care to adequately warn foreseeable users such as Plaintiff of the dangers of ingesting adulterated Digitek® (Digoxin) and to warn about the Unapproved Excessive Dose of Digitek® (Digoxin).

d.      failed to use reasonable care to make reasonable tests and inspections and/or evaluations necessary to discover defects and unreasonably dangerous conditions associated with the Recalled Digitek® (Digoxin).

e.      failed to comply with and/or to use reasonable care to comply with standards of good manufacturing practices with respect to the manufacture of Digitek® (Digoxin).

f.      failed to use reasonable care to investigate and/or use reasonable alternative manufacturing, production, testing, and inspection processes for Digitek® (Digoxin)

g.      failed to use reasonable care to warn Plaintiff of dangers

known and/or reasonable suspected to Defendants to be associated with the Recalled Digitek® (Digoxin).

h.    failed to use reasonable care to make the Recalled Digitek® (Digoxin) safe.

i.    represented that the Recalled Digitek® (Digoxin)  was safe for use for its intended purpose, when in fact it was not; and

j.    failed to use reasonable care to timely conduct a recall of Digitek® (Digoxin) and when the recall was implemented, they failed to use reasonable care to implement the recall and inform the medical community, and the public, including Plaintiff of all relevant information such that any chance of harm was minimized to the fullest extent possible.

## COUNT III
## PRODUCT LIABILITY- NEGLIGENCE PER SE

57.

Paragraphs 1 through 56 of Plaintiff's Complaint are hereby re-alleged

and incorporated as though fully set out herein;

58.

At all times material to this action Defendants were responsible for Digitek® (Digoxin) and its sale in an adulterated condition.

59.

At times relevant herein, Defendants violated the Federal Food, Drug and Cosmetic Act 21 U.S.C. § 301, et seq., and the rules and federal regulations provided thereunder, as well as other applicable laws, statutes and regulations which statutes, rules and regulations were enacted for the benefit and protection of the class of persons that includes the Plaintiff.

60.

At all times material to their action, the Recalled Digitek® (Digoxin) was expected to reach and did reach, consumers in the State of Alabama and throughout the United States, including Plaintiff without substantial change in the condition in which it was sold.

61.

At all times material to this action, the Recalled Digitek® (Digoxin) was manufactured, produced, tested, packaged, marketed, distributed, labeled, released and/or sold by Defendants in a defective and unreasonably dangerous in violation of federal laws and regulations at the time it was placed into the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.   Digitek® (Digoxin) was insufficiently tested and inspected

b.   The Recalled Digitek® (Digoxin) contained an unreasonably dangerous defect and was not reasonably safe as intended to be used subjecting Plaintiff to risks that exceeded the benefits of the subject product, including but not limited to the risk of serious bodily injury and even death;

c.   The Recalled Digitek® (Digoxin) was defective in formulation, making the use of the Recalled Digitek® (Digoxin) more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other digoxin medications and similar drugs on the market; including Digitek® (Digoxin) with approved doses of Digoxin , with doses that were

consistent with the dose on the label;

d.    The Recalled Digitek® (Digoxin) defects existed before it left the control of Defendants

e.    The Recalled Digitek® (Digoxin) caused harmful side-effects that outweighed any potential utility; and

f.    The Recalled Digitek® (Digoxin) was not accompanied by adequate instructions and/or warnings and labeling to fully apprise consumers, including Plaintiff of the full nature and extent of the risks and side-effects associated with it use, thereby rendering Defendants liable, individually and collectively, to Plaintiff.

62.

At the time the Recalled Digitek® (Digoxin) left the control of Defendants, Defendants violated the aforestated laws or regulations resulting in the injuries to Plaintiff. Defendants are therefore negligent per se for violations of said laws or regulations including the FDA's Good Manufacturing Practices to which Defendants were required to comply.

Compliance with said practices would have prevented or significantly reduced the risk of injury to Plaintiff.

63.

As a direct and proximate result of the violation of said laws or regulations by the Defendants, Plaintiff was harmed and suffered economic loss.

## COUNT IV

## PRODUCT LIABILITY- MANUFACTURING DEFECT

64.

Paragraphs 1 through 64 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

65.

At all times material to this action, Defendants were engaged in the business of and were responsible for the manufacture Digitek® (Digoxin).

66.

At all times material to this action, the Recalled Digitek® (Digoxin)

was expected to reach and did reach consumers in the State of Alabama and

throughout of the United States, including Plaintiff without substantial change

in the condition in which it was sold.

67.

At all times material to this action, the Recalled Digitek® (Digoxin)

contained manufacturing defects which rendered the product unreasonably

dangerous.

68.

The Digitek® (Digoxin) was not suitable or safe for its intended

purpose because it deviated from the formulas approved or allowed by the

FDA and/or deviated from the design specification, formulas, or standards of

the other Digitek® (Digoxin) manufactured by Defendants for sale in the

United States.

69.

These manufacturing defects of Digitek® (Digoxin) occurred while the

product was in the possession and control of Defendants and the

manufacturing defects of Digitek® (Digoxin) existed before it left the control

of the Defendants.

70.

Digitek® (Digoxin) was not made in accordance with Defendants' specifications or performance standards and/or those specifications and standards approved by the FDA.

71.

As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was harmed.  As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff will continue to suffer harm and economic loss.

**COUNT V**

**PRODUCT LIABILITY- FAILURE TO WARN**

72.

Paragraphs 1 through 71 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

73.

The Recalled Digitek® (Digoxin) was defective and unreasonably dangerous when it left the possession of Defendants in that it contained labeling, packaging and warnings insufficient to alert consumers, including Plaintiff of the dangerous risks and reactions associated with Digitek® (Digoxin), including but not limited to failing to warn that Digitek® (Digoxin) contained or may contain a dose of Digoxin inconsistent with the dose on the label.

74.

Plaintiff was prescribed and used the subject product for its intended purpose.

75.

Plaintiff could not have discovered any defect in the product through the exercise of reasonable care.

76.

Defendants as manufacturers, producers, suppliers, inspectors, testers, distributors, releasers or sellers of Digitek® (Digoxin), a prescription drug, are held to the level of knowledge of an expert in the field.

77.

The label, warnings and dosing information that were given by Defendants failed to properly warn physicians, Plaintiff and the public that Digitek® (Digoxin) contained or may contain amounts of Digoxin exceeding or that were inconsistent with the amount on the label and thus ingestion risked serious injuries, side effects and/or death.

78.

The warnings given by Defendants failed to properly and adequate warn consumers ingesting the product of the increased risk of injury and death from over-dosage.

79.

Plaintiff, individually and through her prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of Defendants.

80.

Defendants had continuing duty to warn Plaintiff of the dangers

associated with the Recalled Digitek® (Digoxin).

81.

Had Plaintiff received adequate warnings or information regarding the dose of Digoxin in the Recalled Digitek® (Digoxin) and/or information regarding the risks of ingesting the subject product, she would not have used it.

82.

As a direct a proximate result of the acts and omissions of Defendants, Plaintiff was harmed.  As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff will continue to suffer harm economic loss.

## COUNT VI

## BREACH OF IMPLIED WARRANTY

83.

Paragraphs 1 through 82 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

84.

West Virginia law imposes a duty on the seller of a product to warrant that a product is reasonably fit for its intended purpose.

85.

Defendants, as sellers of Digitek® (Digoxin), warranted that the drug was safe for its intended purpose, including the treatment of atrial fibrillation, atrial flutter and heart failure patients who remain symptomatic after attempts at other treatment.

86.

Plaintiff Mary Woody reasonably relied on the belief that Digitek® (Digoxin) was reasonably safe and fit for its intended purpose.

87.

Defendants breached their implied warranty because the Digitek® (Digoxin) released for public consumption contained twice the amount of active ingredient and was not safe and fit for its intended purpose.

88.

Defendants' breach of their implied warranty was a proximate cause of

Plaintiff's bodily injury and damages.

## COUNT VII

## BREACH OF EXPRESS WARRANTY

89.

Paragraphs 1 through 88 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

90.

Defendants expressly warranted that Digitek® (Digoxin) would be reasonably safe and fit for its intended purpose.

91.

Plaintiff Mary Woody reasonably relied on the express warranty of Defendants that Digitek® (Digoxin) was reasonably safe and fit for its intended use.

92.

Digitek® (Digoxin) does not conform to the express warranties by Defendants because the drug, as produced for public consumption, is

defective and presents a high risk for injury and death to its intended users.

93.

Defendants breached their express warranty regarding the safety and fitness of Digitek® (Digoxin).

94.

Defendants' breach of their express warranty was a proximate cause of Plaintiff's bodily injury and damages.

## COUNT VIII - DAMAGES

95.

Paragraphs 1 through 94 of Plaintiff's Complaint are hereby re-alleged and incorporated as though fully set out herein:

96.

As a direct and proximate result of the negligence, carelessness, recklessness, willful, intentional, deliberate and/or malicious acts of Defendants, individually and collectively, both jointly and severally, the Plaintiff Mary Woody, suffered permanent bodily injury including, but not

limited to, including visual changes, palpitations, irregular pulse, cold sweats

and digitalis toxicity, as well as other damages, requiring medical treatment

and care. Plaintiff has incurred medical bills in the past and will incur medical

bills in the future. Plaintiff has further suffered tremendous pain, suffering,

loss of enjoyment of life, mental anguish and annoyance and inconvenience.

Plaintiff further seeks all other damages allowable by law.

## COUNT IX

## PUNITIVE DAMAGE CLAIM

### 97.

Paragraphs 1 through 96 of Plaintiff's Complaint are hereby re-alleged

and incorporated as though fully set out herein:

### 98.

Defendants' pattern and practice of permitting adulterated drug

products to be released for consumer use; failing to reliably establish the

identity, strength, quality and purity of drug products that they manufacture

and release onto the market; and failure to investigate and document out-of-

specification test results, constitutes an irresponsible, wanton and reckless

attitude toward the safety and health of the public, including Plaintiff Mary

Woody. Such conduct was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of Plaintiff s bodily injuries and damages.

## 99.

Defendants' concealment of the dangers presented to the public, including Plaintiff Mary Woody, after it knew that Digitek® (Digoxin) had been released to the general public with twice the levels of active ingredient was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of Plaintiffs injuries and damages.

## 100.

Defendants' failure to timely and effectively notify the public, including Plaintiff Mary Woody, that Digitek® (Digoxin) had been released to the general public with twice the levels of active ingredient was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of Plaintiff Mary Woody's bodily injury and damages.

## 101.

Plaintiff is entitled to an award of punitive damages as a result of the

deliberate, willful, intentional, reckless and/or malicious conduct of Defendants outlined herein.

**WHEREFORE,** the Plaintiff, Mary Woody demands judgment of and from the Defendants, both jointly and severally, in such sums as will adequately compensate the Plaintiff and punish the Defendants for the bodily injuries and damages inflicted, as aforesaid, which said sums are far in excess of any sums necessary to confer the jurisdiction of the court, together with prejudgment and post-judgment interests, the costs expended in the prosecution of her lawsuit, including reasonable attorney fees, return or refund of all costs associated with the purchase of defective Digitek® (Digoxin) , disgorgement of Defendants' profits from the sale of Digitek® (Digoxin) , and do further pray for such other and further general relief as the court may deem proper.

**THE PLAINTIFF FURTHER DEMANDS A TRIAL BY JURY.**

This __30__ day of July, 2009.

Respectfully submitted,

Hezekiah Sistrunk, Jr., Esq.
State Bar No. 649413
Audrey Tolson
Georgia Bar No. 714321
James Hodes
Georgia Bar No. 358647

*Attorneys for Plaintiff*

**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK & SAMS, P.C.**
The Candler Building, Suite 800
127 Peachtree Street, NE
Atlanta, Georgia 30303
Tel: 404.222.9922
Fax: 404.222.0170

Charles James Esq.
Alabama State Bar No.: JAM028

Cochran, Cherry, Givens, & Smith, P.C.
306 North Main Street
P.O. Box 83049
Tuskegee, Alabama 36083

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| MARY WOODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| vs. | ) | |
| | ) | **2: 09-CV-00753** |
| | ) | |
| MYLAN PHARMACEUTICALS, | ) | |
| INC.; ACTAVIS TOTOWA, LLC; | ) | |
| ACTAVIS GROUP hf; MYLAN | ) | |
| BERTEK PHARMACEUTICALS, | ) | **Initial Complaint filed in** |
| INC.; and UDL LABORATORIES, | ) | **United States District Court** |
| INC. | ) | **Northern District of Alabama** |
| | ) | **CV-09-RRA-0794-M** |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing **Amended Complaint** all counsel of record by first class U.S. mail in envelopes with adequate postage thereon to ensure delivery, addressed to:

Hunter Ahern, Esq.
Shook, Hardy & Bacon, LLP
600 Travis Street, Ste. 1600
Houston, TX 70002

Erica Downey, Esq.
Shook, Hardy & Bacon, LLP
600 17th Street, NW, Ste. 800
Washington, DC 20005

Harvey Kaplan, Esq.
Madeleine McDonough, Esq.
Sarah West, Esq.
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas, MO 64108

Matthew Moriarty, Esq.
Tucker, Ellis & West, LLP
925 Euclid Avenue
Cleveland, OH 44115

Rebecca Betts, Esq.
Allen Guthrie & Thomas, PLLC
500 Lee Street East, Ste. 800
Charleston, WV 25301

Steven F. Casey, Esq.
Steven R. Parker, Esq.
BALCH & BINGHAM LLP
1901 Sixth Avenue North
Post Office Box 306
Birmingham, AL 35201-0306

This __30__ day of July, 2009.

Respectfully submitted,

Audrey Tolson
Georgia Bar No. 714321

*Attorneys for Plaintiff*

**COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK & SAMS, P.C.**
The Candler Building, Suite 800
127 Peachtree Street, NE
Atlanta, Georgia 30303
Tel:  404.222.9922
Fax:  404.222.0170